**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

UNITED STATES

v.

Farbod Azari

    *Defendant*

CASE NO: 1:23CR00251-002

## FARBOD AZARI'S MOTION FOR VARIANCE AND MEMORANDUM IN AID OF SENTENCING

# Table of Contents

Introduction ........................................................................................................ 3

I.    Procedural History ............................................................................3

II.   Criminal History Score ..............................................................…..................4

III.  Legal Principles Governing Sentence ...................................................5

IV.  Arguments for  Less than 46 months ...............…....................…..........6

      A. Acceptance of Responsibility and Remorse ........................................6

      B. Lack of Criminal History .................................................................6

      C. Farbod's Personal History and Characteristics .................................7

      D. Employment History and Potential for Rehabilitation .......................10

      E. Mental Health Considerations ........................................................12

      F. Immigrant Upbring and Appreciation for Democracy .........................12

      G. Collateral Consequences of Farbod's Actions .................................12

      H. Additional Mitigating Factors .....................................................15-19

      I.  U.S.S.G. § 4C1.1(a)(3) Offense Level Decrease .........................19-20

      J.  Need to Avoid Unwarranted Sentencing Disparities .....................20-21

V.   Conclusion ...................................................................................21

      Attached letters of Support

**INTRODUCTION**

Mr. Azari stands before this Court having pled guilty to two charges related to his involvement in the January 6, 2021, Capitol riot, to wit: Count 1 - Civil Disorder (18 U.S.C. § 231(a)(3)), this charge relates to Azari's participation in a civil disorder that obstructed law enforcement officers from performing their duties; and Count 4 - Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon (18 U.S.C. §§ 111(a)(1) and (b)), this charge stems from Azari's use of a flagpole as a weapon against law enforcement officers during the riot.

The defendant, Farbod Azari, humbly requests that this Court impose a sentence below the recommended guideline of 46 months based on his overall conduct.  Mr. Azari acknowledges the gravity of the offenses for which he has pled guilty but submits that a sentence below 46 months is sufficient, but not greater than necessary, to satisfy the statutory purposes of sentencing as articulated in 18 U.S.C. § 3553(a).

## I.      Procedural History

A federal grand jury in the District of Columbia returned an indictment on July 26, 2023, charging Farbod Azari and Farhad Azari with several offenses related to the January 6, 2021, attack on the U.S. Capitol. The charges included civil disorder, obstruction of an official proceeding, assaulting, resisting, or impeding certain officers, destruction of government property, and entering and remaining in a restricted building or grounds.

On November 3, 2023, a superseding indictment was filed, reiterating these charges. Subsequently, on January 22, 2024, Mr. Azari entered guilty pleas to one count each of civil disorder and assaulting, resisting, or impeding certain officers using a dangerous weapon. The remaining counts were to be dismissed at sentencing.

On January 22, 2024, Mr. Azari's bond was revoked after he accepted responsibility for his actions, and he was remanded into custody.

## II.    <u>Criminal History Score</u>

Mr. Azari has zero criminal history points, indicating no prior convictions. Although he had a few minor traffic infractions and two instances of driving without a proper license or registration, these were dismissed and do not contribute to his criminal history score.  Despite initially delaying his guilty plea, Mr. Azari's actions do not necessarily suggest a lack of remorse or responsibility. Rather, they demonstrate his respect for the rule of law and desire to be fully informed of all charges against him. Upon careful review of the charges against him, Mr. Azari admits his undeniable guilt in breaking the law. Despite his delayed realization, he now fully understands the severity of his actions.    It is crucial to recognize that these initial misjudgments do not negate his potential for genuine remorse or acceptance of responsibility. His eventual decision to plead guilty before trial, along with his compliance with all conditions of release, can be seen as a demonstration of his willingness to take responsibility for his actions.

Furthermore, initial denials or false statements to authorities reflect poor judgment, but they do not erase the positive aspects of his character and history.

Overcoming initial fear or denial and ultimately deciding to plead guilty is a meaningful step toward redemption and rectifying past errors. It is important to understand the complexities of human behavior and not simply equate a delayed guilty plea with a lack of remorse. The court should weigh heavily on his clean record, consistent employment, and adherence to release conditions when considering his sentence. Mr. Azari has shown he is capable of being a law-abiding, contributing member of society, and these factors should be considered mitigating when determining his penalty. While the government's recommendation is understandable, it is equally important to acknowledge the mitigating factors in Mr. Azari's case. His lack of criminal history, consistent employment, and compliance with release conditions paint a picture of a law-abiding citizen who made a mistake.

### III.   <u>Legal Principles Governing Sentencing:</u>

Under 18 U.S.C. § 3553(a), a sentencing court must impose a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing. These purposes include:

- Reflecting the seriousness of the offense and promoting respect for the law:
- Providing just punishment for the offense
- Affording adequate deterrence to criminal conduct
- Protecting the public from further crimes of the defendant
- Providing the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

In determining an appropriate sentence, the court must consider various factors, including the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guideline range, and the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a).

### IV.    Argument for a sentence less than 46-Month Sentence:

### A. Acceptance of Responsibility and Remorse:

Mr. Azari has taken full responsibility for his actions by pleading guilty to the charges against him. He has expressed deep remorse for his participation in the events of January 6th and has acknowledged the harm caused by his actions. This genuine remorse indicates a reduced risk of recidivism and a willingness to make amends. Mr. Azari has had over a year to reflect on his actions while incarcerated and understands the gravity of the events of January 6th. He is committed to turning his life around and becoming a productive member of society.  As this Court has stated in prior sentences, "*the person acknowledges they have broken the law and accepts the legal consequences that follow.*"  See  Notes from Sentencing, *United States v. Taylor Johnatakis*, (1:21-cr-00091-RCL)ECF 272 Page 2 *(D.D.C. April 2, 2024)*.

Here, Mr. Azari acknowledges he broke the law and accepts the consequences.  **The ultimate issue for this Court to decide is what are the consequences based on the gravity of his conduct.**

### Lack of Criminal History:

Mr. Azari has no prior criminal history, demonstrating that his involvement in

the Capitol riot was an isolated incident rather than a pattern of criminal behavior. This suggests that he is not a hardened criminal and is capable of rehabilitation.

## B. <u>Farbod's Personal History and Characteristics:</u>



*Farbod as a child in Iran.*

Farbod Azari was born on March 27, 1991, in Kermanshah, Iran, to Farhad Azari and Esmat Karimi Azari. His father, now 65, is currently in DC Jail awaiting sentencing and previously owned a small engine repair shop. His mother, 59, works as a stocker at Publix grocery store in Richmond, Virginia. Farbod's parents have been married for 34 years, showcasing a long-term, stable relationship. His



*Farbod with his parents and sister in the U.S.*

younger sister, Shirin Helen Azari, 26, lives with their mother and works as a lender at Old Point National Bank.



*Farbod with his sister, Shirin.*

Throughout his childhood, Farbod's family provided strong support, ensuring that he and his sister had their basic material needs met. His upbringing was free from abuse and domestic violence, fostering a stable and nurturing environment. Farbod maintains a close relationship with his family, deeply appreciating the strong work ethic his parents instilled in him.



*Farbod at his first Communion.*



*Farbod with his mother and sister.*

The family fled Iran in 1996 due to civil unrest, facing numerous challenges during their time in Pakistan before being granted asylum in the United States in 2000. They initially resided in Phoenix, Arizona, and later moved to Richmond, Virginia. Throughout these transitions, the family's unity and support were pivotal. After two years in Richmond, Farbod's parents managed to buy a single-family home, providing a stable living environment in a suburban neighborhood.



*Farbod helped his father build a shed in the backyard.*

In 2019, Farbod purchased his own home at 1230 Archie Lane, Henrico, Virginia, where he lived alone before his arrest. Since his arrest, he has been trying to rent out the property. Zillow confirms that this four-bedroom, two-and-a-half-bathroom single-family home is available for rent.



*Farbod, his sister, and father in front of the Capitol in early 2000s.*

Farbod became a naturalized U.S. citizen in 2007. He entered the United States on October 27, 1998, and there are no removal proceedings against him, attesting to his stable legal status.

Farbod has never married and does not have any children. He has no reported affiliations with clubs or

extremist groups. His story is a testament to the enduring support and stability provided by his family, which has been crucial to his development and achievements. This strong family foundation underscores his potential to lead a responsible and productive life.

### Attached Letters of Support

The letters are from the family and friends of Farbod Azari, who is facing sentencing for a Civil Disorder and Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon. The letters describe Farbod as kind, respectful, dependable, and hard-working. They highlight Farbod's dedication to his family and friends, his willingness to help others, and his strong work ethic. Their letters make clear that Mr. Azari is far more than the counts of conviction and that he is someone who should be permitted to have a second chance.

- **Shirin Azari (sister)**: Shirin describes their upbringing as children of Iranian immigrants in Richmond, Virginia, emphasizing the close-knit bond within their family and community. She highlights Farbod's respectful nature, instilled in him from a young age, and his initial aspirations to serve in the military, which were unfortunately hindered by his hearing impairment. Shirin speaks to Farbod's dedication to his career as an engineer with the Army Corps of Engineers at Fort Lee, showcasing his commitment to contributing to society. She paints a picture of Farbod as a caring, selfless, and compassionate individual who consistently prioritizes others' needs above his own. Shirin emphasizes Farbod's strong work ethic and determination to create a better life for himself, drawing inspiration from their parents' struggles. She concludes by expressing her deep pride in Farbod's growth and achievements, urging the judge to consider his past suffering and show him mercy.

- **Karan Patel (friend)**: Karan Patel, an AI Engineer, highlights his decade-long friendship with Farbod, emphasizing their shared educational background in mechanical engineering. He speaks to Farbod's initial desire to serve in the Air Force, which was not possible due to his hearing impairment, and how Farbod channeled his service-oriented nature into other avenues. Karan shares personal anecdotes that illustrate Farbod's empathy and understanding towards immigrant families, particularly highlighting his generosity and willingness to share his knowledge and expertise. He emphasizes Farbod's passion for his career as a

Home Inspector and Realtor, underscoring his commitment to upholding high standards and ensuring the safety and satisfaction of his clients. Karan concludes by expressing his belief that Farbod's actions were uncharacteristic and that he is a hardworking and positively influential member of society who deserves a second chance.

- **Michael Albensi (friend)**: Michael Albensi, a Design Release Engineer at General Motors, offers a character reference for Farbod (aka Francis Azari) based on their 13-year friendship, which began during their time at Virginia Commonwealth University. He describes Francis as a trusted friend, emphasizing his honesty, dependability, and strong work ethic. Michael asserts that Francis's offenses are out of character, as he has never witnessed him escalate disagreements or engage in conflict. He also highlights Francis' positive relationships with family and friends, emphasizing his welcoming and hospitable nature. Michael mentions a recent conversation with Francis, revealing that Francis attended the capital to protest the election results and is now deeply remorseful for his actions. He concludes by expressing his belief that Francis has learned from his mistakes and is willing to make amends.

- **Thomas Jiannalone (family friend)**: Thomas Jiannalone, a graduate student and manager in soft drink distribution, provides a character reference for Farbod Azari (aka Francis Azari), whom he has known for nearly 14 years. He emphasizes the Azari family's kindness, generosity, and hospitality, highlighting Francis's selfless nature and willingness to prioritize others' needs. Thomas speaks to Francis's dedication to his real estate business and his tireless work ethic, often exceeding 12-hour workdays to achieve the best results for his clients. He acknowledges the charges against Francis but believes that this experience has taught him a valuable lesson. Thomas emphasizes Francis's remorse and his commitment to learning from his mistakes, expressing confidence that Francis's strong spirit and desire to contribute to society will ultimately prevail.

- **William Sostaric (acquaintance of Farbod Azari):** William Sostaric briefly attests to knowing Farbod Azari's father, Farhad Azari, for over 15 years through their professional relationship in the small engine repair business. He describes Farhad as a hardworking and family-oriented man. He recalls observing Farbod Azari working alongside his father in the family business from a young age, noting Farbod's respect and honor for his father.

## C. Employment History and Potential for Rehabilitation



*Farbod at a job site while he worked for the Army Corps of Engineers (2018).*

Farbod has shown remarkable professional accomplishments and an entrepreneurial spirit throughout his career. From 2016 to 2018, he served as a project engineer for the United States Army Corps of Engineers in Chesterfield, Virginia. He then worked at the Facebook Data Center in Sandston, Virginia, from 2018 to 2021.

In 2020, Farbod founded Azari Precision, a highly successful home inspection business, while also working as a real estate agent for EXP Realty. Under his leadership, Azari Precision was consistently rated among the top 10 in real estate sales in Virginia and was voted the Best Home Inspection Company in Richmond for consecutive years. The business generated substantial revenue, reflecting Farbod's strong work ethic and business acumen.

Farbod holds a real estate license valid until 2025 and previously held a home inspector license, showcasing his expertise and qualifications in these fields. However, as a result of his plea and subsequent incarceration, the Virginia Department of Professional and Occupational Regulation revoked his home inspector license. While a federal felony conviction does not automatically disqualify him from renewing his real estate license in Virginia, it may complicate the process. The Real Estate Board has the discretion to deny renewal, impose sanctions, or require additional conditions for renewal.

Given his track record of professional success, Farbod possesses the skills and experience necessary to quickly regain employment upon release. His entrepreneurial

spirit and proven ability to grow and manage a successful business indicate that he is well-equipped to reintegrate into the workforce and contribute positively to the economy. These qualities strongly support the likelihood of Farbod being gainfully employed after his release.

### D. <u>Mental Health Considerations</u>:

While Mr. Azari has not been diagnosed with any mental health conditions, the stress and trauma of his involvement in the Capitol riot, subsequent arrest, and incarceration may have exacerbated any underlying vulnerabilities. A sentence at the lower end of the guidelines would allow him to access mental health resources and support to address these issues.

### E. <u>Immigrant Upbringing and Appreciation for Democracy</u>:

Mr. Azari's family fled civil unrest in Iran when he was a child, seeking refuge in Pakistan and eventually immigrating to the United States. These experiences instilled in him a deep appreciation for democracy and the rule of law. His actions on January 6th were a betrayal of these values, and he is ashamed of his participation in the events of that day. He understands the importance of peaceful protest and civic engagement and is committed to upholding these principles in the future.

### F. <u>Collateral Consequences of Farbod's Actions</u>

Mr. Azari's misguided actions on January 6, 2021, have led to a cascade of severe consequences that have already begun to reshape his life and will undoubtedly have lasting effects beyond any potential incarceration. His once-thriving home inspection

business, Azari Precision, which he proudly built from the ground up, is now shuttered due to his arrest and subsequent legal battles. This closure represents not only the loss of his source of income but also the culmination of years of hard work, dedication, and the trust he cultivated within his community.

Furthermore, the Virginia Board for Asbestos, Lead, and Home Inspectors' revocation of his home inspector license is a devastating blow to his professional standing. This license was not merely a credential but a testament to his expertise and commitment to upholding industry standards. Its revocation strips him of his ability to practice in his chosen field, tarnishing his reputation and potentially hindering future employment opportunities in the field of home inspection.  The consequences he has paid and will continue to pay are punishment. He will soon be branded a convicted felon and with that, he will suffer the "civil death" of collateral consequences in enumerable life areas from employment through civil rights. Before this prosecution, his professional trajectory was luminous. So many dreams he and others had for himself have been deferred if not destroyed.



Adding to his financial strain, Mr. Azari's attempt to mitigate losses by renting out his home has been unsuccessful. The property located in Henrico, VA, which he purchased in 2019, remains unoccupied, resulting in ongoing mortgage payments without rental





income to offset them.



Beyond the tangible losses, the damage to Mr. Azari's professional reputation is perhaps the most profound and enduring consequence. His involvement in the events of January 6th has irrevocably altered how he is perceived by clients, colleagues, and the community. The trust he once enjoyed as a reliable and competent professional has been eroded, replaced by skepticism and doubt. Rebuilding this trust, if possible, will be a long and arduous journey.

It is important to consider that Mr. Azari has already suffered significant consequences for his actions. His business is closed, his home inspection license is revoked, and his reputation is tarnished. These losses will continue to affect him long after any potential



incarceration ends. It is essential not to define Mr. Azari solely by this one event but to consider the totality of his life and character.

## G. Additional Mitigating Factors: - THE GRAVITY OF HIS CONDUCT

The government's sentencing memorandum acknowledges that Mr. Azari did not enter the Capitol building during the riot. This distinguishes him from other defendants who engaged in more egregious conduct, such as entering the Capitol and causing property damage.



Azari gestured at the line of police officers and yelled. Azari then spat at the line of officers, as depicted below, and retreated into the crowd



Throw a water bottle at the line of officers



kicking and pulling at it, using his foot to kick at and stomp on the gate, until it was flat on the ground



waved a red flag on white flagpole



jabbed the flagpole at the line of USCP officers, and made physical contact with an officers' arm

THE OFFICER WAS NOT INJURED FROM THIS ACTIVITY



Threw a water bottle in the direction of the officers
OFFICERS WERE NOT INJURIED

swung the flagpole towards the line of officers
OFFICERS WERE NOT TOUCHED OR INJURED

He threw the flagpole in the direction of the officers
OFFICER WERE NOT TOUCHED OR INJURED

Mr. Azari's actions on that fateful day were undoubtedly wrong and cannot be justified. The gravity of his eight criminal activities cannot be denied and he should be held accountable for them. It is vital to carefully consider the consequences of one's actions. While it is universally agreed that any form of assault on officers is abhorrent, it

is important to recognize that there are varying degrees of severity in such behavior. Without question if the Court were to solely focus on his past life and character, Mr. Azari would be deemed eligible for a probation sentence.  The Court is imposing a sentence for the defendant's actions on January 6, 2021, rather than considering his conduct prior to that date.

But it is imperative that the Court looks at the specific events of that day and the impact of his actions. Undersigned has carefully studied this case and the Court's previous sentencing decisions, and the reasoning behind them. However, Undersigned respectfully urges the Court to consider a sentence less than 46 months, especially since Mr. Azari did not cause any permanent or severe physical harm to any of the officers involved.

While it is true that some officers sustained injuries during the chaos, it is important to note that Mr. Azari's actions, although assaultive, did not result in physical harm. This is a crucial factor to consider when determining the appropriate punishment. It is also worth noting that Mr. Azari has already lost everything he has worked for at this point in his life - a punishment in itself.

Undersigned understand that apologies and character letters may not hold much weight in the Court's decision. However, the Defense implores the Court to focus on the specific events of that day and consider a sentence that takes into account the lack of severe physical harm caused by Mr. Azari. The Defense hopes that the Court will show leniency and compassion towards Mr. Azari, who deeply regrets his actions.

Furthermore, the government's memorandum also notes that Mr. Azari attempted to de-escalate the situation at one point by encouraging other rioters not to attack the police. While this does not excuse his other violent actions, it does suggest a capacity for empathy and a willingness to promote peace.

The government also acknowledges that Mr. Azari has maintained employment, complied with the conditions of his release, and has strong family ties.

## H. U.S.S.G. § 4C1.1(a)(3) Offense Level Decrease

The government's argument against applying § 4C1.1 to the Azaris case is overly broad and misinterprets the intent of the guideline. While it's true that the Azaris engaged in violence during the January 6th riot, a nuanced application of § 4C1.1 suggests it could still be applicable in their case.

The guideline intends to recognize that first-time offenders with no criminal history are statistically less likely to recidivate. This intent aligns with the broader goals of sentencing, which include rehabilitation and reducing future crime. Denying this reduction to all January 6th participants, regardless of individual circumstances, disregards this core principle.

The government's definition of violence is overly inclusive. While the Azaris' actions were undoubtedly aggressive and reprehensible, not all acts of violence are equal. The guideline's exclusion of "violence" should be interpreted to mean acts that

cause significant bodily harm or pose a serious risk of such harm. The Azaris' actions, while violent, did not rise to this level of severity.

Sentencing should be an individualized process. The Azaris' lack of criminal history and their personal circumstances should be considered alongside their actions on January 6th. A blanket denial of § 4C1.1 ignores the possibility that they may be less likely to re-offend than individuals with prior criminal records who engaged in similar or even less severe acts of violence.

The government emphasizes the need for deterrence in January 6th cases. However, deterrence should not come at the expense of rehabilitation. Denying the Azaris the opportunity for a reduced sentence under § 4C1.1 could hinder their rehabilitation and increase the likelihood of future criminal behavior.

Applying § 4C1.1 to the Azaris would not create an unwarranted sentencing disparity. Other January 6th defendants with similar levels of culpability and no criminal history have received the reduction. Denying it to the Azaris would introduce an arbitrary distinction based solely on their participation in the riot, rather than their individual circumstances.

The court should consider applying § 4C1.1 to the Azaris case. A nuanced interpretation of the guidelines and a focus on individualized assessment would better serve the goals of sentencing and avoid unwarranted disparities. While the Azaris' actions were reprehensible, denying them the potential for a reduced sentence based solely on their participation in the January 6th riot would be unjust and counterproductive.

**I.**   **Need to Avoid Unwarranted Sentencing Disparities:**

A sentence below 46 months would be consistent with sentences imposed on other defendants with similar backgrounds and levels of culpability in the Capitol riot. For example, in *United States v. Wilson*,( 1:21-CR-00345-RCL) the defendant received a 51-month sentence for assaulting multiple police officers, but he did not enter the Capitol building and expressed remorse for his actions. Similarly, in *United States v. Elliott*, (1:21-CR-00735-RCL) the defendant received a 37-month sentence for a single assault on a police officer, but he also did not enter the Capitol and expressed remorse. Mr. Azari's conduct, while serious, is not as egregious as that of defendants who received significantly longer sentences, such as those who entered the Capitol and caused extensive property damage.

## V.   Conclusion:

Considering these mitigating factors, a sentence of less than 46 months would be sufficient but not greater than necessary to achieve the goals of sentencing as set forth in 18 U.S.C. § 3553(a). It adequately addresses the seriousness of the offenses, recognizes Mr. Azari's individual circumstances and potential for rehabilitation, and avoids unwarranted sentence disparities. This sentence would allow Mr. Azari to take responsibility for his actions, receive appropriate rehabilitation, and reintegrate into society as a productive and law-abiding citizen.

Respectfully submitted,

ROLLINS AND CHAN

/s/

Mark Rollins /s/ _____
DC Bar Number: 453638
Counsel for Farbod Azari
419 7TH Street, NW
Suite 405
Washington, DC 20004
Telephone No. 202-455-5610
Direct No: 202-455-5002
mark@rollinsandchan.com

**Date Filed:** June 3, 2024

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 3, 2024 this motion was electronically filed pursuant to the rules of the Court.

/s/ _____
Mark Rollins